UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| KATANA SILICON TECHNOLOGIES LLC, <br><br> Plaintiff, <br><br> v. <br><br> GLOBALFOUNDRIES, INC., GLOBALFOUNDRIES U.S. INC., and GLOBALFOUNDRIES U.S. 2 LLC, <br><br> Defendants. | § § § § § § § § § § § § § § § § § Case No. 1:22-cv-00852-RP |

**PLAINTIFF KATANA SILICON TECHNOLOGIES LLC'S MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF EXPERT STEPHEN L. BECKER, PH.D.**

Katana Silicon Technologies LLC ("Katana") moves to exclude certain opinions of Stephen L. Becker, Ph.D, the damages expert of GlobalFoundries, Inc., GlobalFoundries U.S. Inc., and GlobalFoundries U.S. 2 LLC (collective, "GlobalFoundries" or "Defendants"). As detailed below, several of Dr. Becker's opinions are simply a recitation of the conclusions of another expert without either attempting to assess the validity of those conclusions or performing further analysis to link those findings to an issue relevant to this case. Trial testimony on these opinions should therefore be excluded under at least Rules 702, 402, and 403 of the Federal Rules of Evidence.

**ARGUMENT AND AUTHORITIES**

Federal Rule of Evidence 702 makes this Court the gatekeeper of an expert's proposed trial testimony. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993). When acting as gatekeeper, courts examine "whether the reasoning or methodology underlying the testimony is scientifically valid and [] whether that reasoning or methodology properly can be applied to the facts in issue." *Id*. When there is too great of an analytical gap between the evidence presented and

the expert's conclusions, the expert's opinions should be excluded. *See, e.g.*, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). "[T]he gatekeeper role is intended to prevent the introduction of confusing and unreliable testimony to the jury." *Air Evac EMS, Inc. v. Sullivan*, 331 F. Supp. 3d 650, 657 (W.D. Tex. 2018); *see also* Fed. R. Evid. 702 advisory committee's note to 2023 amendments ("[T]he rule has been amended to clarify and emphasize that expert testimony may not be admitted unless the proponent *demonstrates to the court* that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." (emphasis added)).

The party proffering expert testimony must show by a preponderance of proof that the expert is qualified and will testify to scientific or specialized knowledge that will assist the trier of fact in understanding and disposing of issues relevant to the case. *E.g.*, *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002). Moreover, parties may not use experts to circumvent the Federal Rules of Evidence. *See, e.g.*, *Wi-LAN Inc. v. Sharp Elecs. Corp.*, 992 F.3d 1366, 1375 (Fed. Cir. 2021)). Applying these standards, significant portions of Dr. Becker's rebuttal report, attached hereto as Exhibit A, and any testimony relying on those portions, should not be permitted at trial.

**A. Dr. Becker relies blindly on another expert's rejected valuation opinion offered in an unrelated arbitration and would circumvent the rules of hearsay.**

In his analysis, Dr. Becker considers patent valuations from a Mr. Richard Ehrlickman, an expert retained several years ago by certain respondents including Katana in an unrelated arbitration. *See* Ex. A ¶¶ 94, 101, 109, 128, 202, 282, 292, 358, 386, 399 (referencing the valuations); see also Ex. A ¶¶ 16, 328, 360, 362, 378 (relying on the valuations). Patent valuation in that arbitration was considered in the context of determining how much to pay a withdrawing law firm terminated from contingent-fee work that had resulted in consideration paid in both cash and the transfer of patents. Ultimately, the arbitrator rejected Mr. Ehrlickman's valuation, which



had purportedly been based on a "brokered market approach," noting that the "value of an acquired patent is not [its] sale price; the value is [its] worth in a patent licensing campaign." Ex. B at 12.

Mr. Ehrlickman is not involved in this case whatsoever and was not deposed. Nor did Dr. Becker evaluate Mr. Ehrlickman's valuation data, method, or conclusions to form his own opinion about them. Instead, he simply adopted the valuations wholesale. Dr. Becker adopted Mr. Ehrlickman's opinions without offering any discussion or assessment of the validity of, the methodology used within, or the reasoning underlying the opinions, much less their factual basis. *See* Ex. C, 88:16–23 ███████████████████████████████████████████████████████████████████████████████████████████████████████ *see also id.*, 112:2–12; *id.*, 128:11-18 ███████████████████████████████████████ But an expert may not be used merely as "the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion" without attempting to assess the validity of the opinions relied upon. *Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 524 (5th Cir. 2013); *Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-CV-33, 2015 WL 12911530, at *2 (E.D. Tex. Sept. 30, 2015) ("Experts must undertake their own analyses and may not blindly rely on the opinions of others."); *see also In re TMI Litig.*, 193 F.3d 613, 716 (3d Cir. 1999) (explaining that an expert's "failure to assess the validity of the opinions of the experts he relied upon together with his unblinking reliance on those experts' opinions, demonstrates that the methodology he used to formulate his opinion was flawed under *Daubert* as it was not calculated to produce reliable results").

Moreover, allowing Dr. Becker to testify to Mr. Ehrlickman's conclusions about a "brokered market approach" would render Dr. Becker a conduit of inadmissible hearsay—offered without analysis to prove the truth of the matter asserted—in violation of the rules of evidence. This should not be permitted, as the Court "must serve a gate-keeping function with respect to Rule 703 opinions to ensure 'the expert isn't being used as a vehicle for circumventing the rules of evidence.'" *Factory Mut.*, 705 F.3d at 524 (quoting *In re James Wilson Assocs.*, 965 F.2d 160, 173 (7th Cir. 1992)). At his deposition, Dr. Becker seemed to believe his blind reliance was acceptable simply because, in the unrelated arbitration, Katana was one of the parties that had retained Mr. Ehrlickman. Ex. C, 130:10 – 132:21. But it's not Dr. Becker's role to rule on hearsay, collateral estoppel, or agency. And the Fifth Circuit has previously held that expert testimony serves as a party admission under hearsay rules only "where the expert was an agent of the opposing party or where the expert's statements or reports were prepared for the very case in which admission was sought." *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 12 F.4th 576, 489 (5th Cir. 2021) (citing *Fox v. Taylor Diving & Salvage Co.*, 694 F.2d 1349, 1355 (5th Cir. 1983)). However, an expert is not an agent of a party "simply by virtue of acting as an expert witness in a prior case." *HTC*, 12 F.4th at 489. "Since an expert witness is not subject to the control of the party opponent with respect to consultation and testimony he or she is hired to give, the expert witness cannot be deemed an agent." *Id.* (quoting *Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 164 (3d Cir. 1995)). Because Mr. Ehrlickman was not hired in this action to provide his opinion (indeed, his approach would not be relevant in the context of this case), he is not an agent for Katana under Rule 801. Thus, relying on Mr. Ehrlickman's rejected arbitration testimony concerning a "brokered market" valuation in the current action would be improper and would import hearsay.

Allowing Dr. Becker to testify as to what Mr. Ehrlickman concluded would render Dr. Becker nothing more than a conduit of inadmissible hearsay on this issue, in violation of the rules of evidence. His testimony in paragraphs 16, 94, 101, 109, 128, 202, 282, 292, 328, 358, 360, 362, 378, 386, and 399 of his report should therefore be excluded insofar as it relates to his adoption of Mr. Ehrlickman's "brokered market" valuations.

### B. Dr. Becker offers no independent analysis or reasoned opinions on Ehrlickman's opinions or relevant analysis of purported non-infringing alternatives.

Dr. Becker's discussions on both Mr. Ehrlickman's patent valuations and Dr. Bravman's purported non-infringing alternatives offer nothing more than a repetition of other experts' opinions and an extra-summation of attorney argument. Dr. Becker brings no independent expertise or professional knowledge to his discussion of the valuations and purported non-infringing alternatives.

Federal Rule of Evidence 702 requires expert testimony to be based on reliable principles and methods applied to the facts of the case. By merely adopting someone else's valuations without independent analysis or verification, Dr. Becker did not employ a scientific or reliable approach. Simply taking an absent expert's conclusions as true does not meet the standard of expertise required under FRE 702, as it lacks the rigor and critical evaluation expected of expert testimony. "[E]xpert testimony based solely or primarily on the opinions of other experts is inherently unreliable." *Hunt v. McNeil Consumer Healthcare*, 297 F.R.D. 268, 275 (E.D. La. 2014). "It is only when the expert undertakes some independent investigation of the underlying opinions that his testimony may be considered reliable." *Id.* Thus, a testifying expert may not "act as a mere conduit" for another expert's opinion. *Ramirez v. Escajeda*, No. EP-17-CV-00193, 2021 WL 1131721, at *14 (W.D. Tex. Mar. 24, 2021).

As for Dr. Bravman's purported non-infringing alternatives, Dr. Becker does not even rely on them for any portion of his analysis. Indeed, he does little more than note that Dr. Bravman claims the alternatives exist. *See, e.g.*, Ex. A ¶¶ 242–245, 346. Thus, Dr. Becker is not using his expertise to assist the trier of fact in assessing damages in these instances. Moreover, entirely *absent* from his report is any analysis or opinions quantifying economic factors such as time or cost to develop the alternatives, or the acceptability of the alleged non-infringing alternatives to GlobalFoundries or its customers, which would have been required to make the alternatives relevant. Dr. Becker confirmed this in his deposition:



Ex. C at 101:5–20. Given these circumstances, the alleged non-infringing alternatives are not even relevant. Under 35 U.S.C. § 284, a patent holder is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for *the use made* of the invention by the infringer." *Id.* (emphasis added). The statute establishes a reasonable royalty as the floor below which damage awards may not fall. *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1326 (Fed. Cir. 1987). "[A] reasonable method for determining a reasonable royalty is the hypothetical negotiation approach, which 'attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement

began.'" *Summit 6, LC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1299 (Fed. Cir. 2015) (quoting *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009)). Whether the accused infringer had acceptable non-infringing alternatives available to it at the time of the hypothetical negotiation may be probative of a reasonable royalty for the patented technology. *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (stating that "[t]he utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results" is a key factor in a reasonable royalty analysis). But without any analysis of the economic relevance or impact of GlobalFoundries' alleged non-infringing alternatives by Dr. Becker as Defendants' economic expert, his "opinions" on non-infringing alternatives are simply unreliable and irrelevant and would be likely to prejudice Katana unfairly and confuse the jury.

The use of experts to merely pass along information provided by others and lay out the defendant's theory of the case is improper and should not be permitted. *Orthoflex, Inc. v. Thermotek, Inc.*, 986 F. Supp. 2d 776, 798 (N.D. Tex. 2013) (deeming it impermissible for an expert witness to be called "merely to present [a party's] trial arguments as expert opinions"); *Robroy Indus.-Tex*, 2017 WL 1319553, at *3. Because that is all he does here, Dr. Becker's discussion of Dr. Bravman's purported non-infringing alternatives should also be excluded.

## CONCLUSION

At bottom, an expert's testimony must be rooted in fact, employ reliable methodologies, and present the opinions *of that expert* applying *actual expertise* to a relevant issue. The matters described above don't meet this test because Dr. Becker merely repeats the opinions of others (i.e., Mr. Ehrlickman and Dr. Bravman). Moreover, he fails to add his own expertise or otherwise link those opinions to a relevant issue. For all of these reasons, the Court should preclude Dr. Becker

from testifying as to the matters related to purported non-infringing alternatives and Mr. Ehrlickman's "brokered market" valuations set forth in at least paragraphs 16, 94, 101, 109, 128, 202, 242–245, 282, 292, 328, 346, 358, 360, 362, 378, 386, and 399 of Dr. Becker's report.

Date: February 6, 2025

Respectfully submitted,

/s/ *Scott W. Breedlove*
E. Leon Carter
Texas Bar No. 03914300
lcarter@carterarnett.com
Scott W. Breedlove
Texas Bar No. 00790361
sbreedlove@carterarnett.com
Omer Salik
Texas Bar No. 24128282
osalik@carterarnett.com
Howard L. Lim
Texas Bar No. 24092701
hlim@carterarnett.com
**CARTER ARNETT PLLC**
8150 N. Central Expy, Suite 500
Dallas, Texas 75206
Telephone No. (214) 550-8188
Facsimile No. (214) 550-8185

**ATTORNEYS FOR PLAINTIFF KATANA SILICON TECHNOLOGIES LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that on February 6, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record. Any documents filed under seal were served by email.

/s/ *Scott W. Breedlove*
Scott W. Breedlove

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that counsel for Katana conferred with counsel for GlobalFoundries on February 5, 2025, regarding the relief requested herein, and GlobalFoundries opposes the motion.

/s/ *Scott W. Breedlove*
Scott W. Breedlove