UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| KATANA SILICON TECHNOLOGIES LLC,<br><br>　　Plaintiff,<br><br>v.<br><br>GLOBALFOUNDRIES, INC., GLOBALFOUNDRIES U.S. INC., and GLOBALFOUNDRIES U.S. 2 LLC,<br><br>　　Defendants. | §§§§§§§§§§§§§§§§<br><br>Case No. 1:22-cv-00852-RP<br><br>**PUBLIC VERSION** |

**PLAINTIFF KATANA SILICON TECHNOLOGIES LLC'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF EXPERT STEPHEN L. BECKER, PH.D. [Dkt. 143]**

██████████████████████████████████

**TABLE OF CONTENTS**

ARGUMENT ........................................................................................................................... 1

A.      Improper Reliance on the Ehrlickman Valuation ................................................... 1

       1.      Dr. Becker's analysis blindly relies on the rejected opinions of an expert in his same field offered in an unrelated arbitration and is not the product of any independent assessment or reliable methodology ......................... 1

       2.      Beyond being a mere mouthpiece for another person's irrelevant opinion, Dr. Becker's testimony related to the Ehrlickman valuation would do little more than import hearsay and should be excluded for this additional reason ................................................................................................................ 6

B.      Lack of Economic Analysis for Purported Non-Infringing Alternatives ........................... 9

CONCLUSION ...................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Abstrax, Inc., v. Dell, Inc.*, No. 2:07-CV-00221,
 2009 WL 10677355 (E.D. Tex. Oct. 9, 2009) ............................................................................8

*Albritton v. Acclarent, Inc.*, No. 3:16-cv-03340,
 2020 WL 11627275 (N.D. Tex. Feb. 28, 2020) .........................................................................9

*Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630,
 2014 WL 794328 (N.D. Cal. 2014) ...........................................................................................8

*Clanton v. United States*, No. 15-CV-124,
 2017 U.S. Dist. LEXIS 93996 (S.D. Ill. June 19, 2017) ............................................................8

*Collins v. Wayne Corp.*,
 621 F.2d 777 (5th Cir. 1980) .....................................................................................................8

*Daubert v. Merrell Dow Pharms., Inc.*,
 509 U.S. 579 (1993) ..................................................................................................................5

*Factory Mutual Insurance Co. v. Alon USA L.P.*,
 705 F.3d 518 (5th Cir. 2013) .....................................................................................................3

*Fox v. Taylor Diving & Salvage Co.*,
 694 F.2d 1349 (5th Cir. 1983) ...................................................................................................8

*Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-CV-33,
 2015 WL 12911530 (E.D. Tex. Sept. 30, 2015) ........................................................................4

*Grain Processing Corp. v. American Maize-Products. Co.*,
 185 F.3d 1341 (Fed. Cir. 1999) .................................................................................................9

*HTC Corp. v. Telefonaktiebolaget LM Ericsson*,
 12 F.4th 476 (5th Cir. 2021) ......................................................................................................8

*In re Hanford Nuclear Rsrv. Litig.*,
 534 F.3d 986 (9th Cir. 2008) .....................................................................................................8

*In re TMI Litigation*,
 193 F.3d 613 (3d Cir. 1999) ......................................................................................................4

*Kreppel v. Guttman Breast Diagnostic Inst., Inc.*, No. 95-cv-10830,
 1999 WL 1243891 (S.D.N.Y. Dec. 17, 1999) ...........................................................................8

*Kumho Tire Co. v. Carmichael*,
 526 U.S. 137 (1999) ................................................................................................................10

*LaserDynamics, Inc. v. Quanta Computer, Inc.*, No. 2:06-CV-348,
  2011 WL 197869 (E.D. Tex. Jan. 20, 2011), *objections overruled*, No. 2:06-CV-348,
  2011 WL 13196509 (E.D. Tex. Jan. 28, 2011) ........................................................................ 9

*Marceau v. Int'l Broth. of Elec. Workers*,
  618 F. Supp. 2d 1127 (D. Ariz. 2009) .................................................................................... 8

*Sims v. Kia Motors of Am., Inc.*,
  839 F.3d 393 (5th Cir. 2016) ................................................................................................... 3

*Stoller Enters., Inc. v. Fine Agrochemicals Ltd.*,
  705 F. Supp. 3d 774 (S.D. Tex. 2023) .................................................................................... 9

*United States v. Downing*,
  753 F.2d 1224 (3rd Cir. 1985) ................................................................................................ 6

*United States v. Valencia*,
  600 F.3d 389 (5th Cir. 2010). ............................................................................................ 2, 3

**Other Authorities**

Fed. R. Evid. 702 ........................................................................................................... 2, 3, 6

Katana Silicon Technologies LLC ("Katana") respectfully submits this reply in support of its motion to exclude certain opinions of Stephen L. Becker, Ph.D, the damages expert of GlobalFoundries, Inc., GlobalFoundries U.S. Inc., and GlobalFoundries U.S. 2 LLC (collectively, "GF" or "Defendants"). *See* Dkt. 143 ("Motion" or "Mot."). GF's response, *see* Dkt. 181 ("Response" or "Resp."), rather than carrying GF's burden, instead confirms that GF seeks to avoid the Federal Rules of Evidence by using an expert as a mouthpiece to present secondhand knowledge and attorney argument.

Despite GF's 20-page Response[1] to a 7-page Motion, the fact remains that Dr. Becker brings no independent expertise or specialized knowledge to Mr. Ehrlickman's valuations or Dr. Bravman's purported non-infringing alternatives. This is not the case of an expert in one field reasonably relying on relevant expert analysis in the same case from an expert in a different field. Rather, with the Ehrlickman opinion, for example, Becker relies on another expert's analysis in Becker's own field—analysis that was rejected by an arbitrator in an unrelated arbitration with a materially different context but was simply accepted by Dr. Becker without critique. This is precisely the sort of situation where the Court in its gatekeeper role should step in. GF has not shown and cannot demonstrate to the Court that "it is more likely than not" that Dr. Becker's opinions about the arbitration patents satisfy *any* of Rule 702's elements, much less all of them.

## ARGUMENT

**A. Improper Reliance on the Ehrlickman Valuation**

    **1. Dr. Becker's analysis blindly relies on the rejected opinions of an expert in his same field offered in an unrelated arbitration and is not the product of any independent assessment or reliable methodology.**

---

[1] Apparently seeking more than 20 pages for its Response, GF continues arguing the same issues about Dr. Becker in most of its response to Katana's motion to exclude certain testimony of GF's technical expert, John Bravman. *See* Dkt. 181.

1

In its Response, GF mischaracterizes Dr. Becker's reliance on Mr. Ehrlickman's valuations, claiming that "Dr. Becker offers independent, reasoned opinions that [] carefully considered the circumstances surrounding Mr. Ehrlickman's valuations." Resp. 3. GF's claim lacks any reasonable basis.

Mr. Ehrlickman's rejected valuation did not, as GF suggests, "evidence how Katana itself valued the patents at that time." *Id.* at 7 (emphasis removed). Even if such a suggestion were arguable, it would need to be *attorney* argument, presumably based on some *fact* witness testimony and documentation. As explained in Katana's Motion, the Ehrlickman valuation employed a "brokered-market approach" that was created in the context of an arbitration to determine, under an attorney-client contract, how much to pay a withdrawing law firm from contingent-fee work that had resulted in both cash and the transfer of patents. Mot. 3 (citing Mot., Ex. B at 12). Nowhere in Dr. Becker's report does he (1) analyze how Ehrlickman performed the analysis in that arbitration, (2) explain why the same analysis would be appropriate here even though it was rejected there, or (3) acknowledge the materially different circumstances present in the arbitration. Thus, Dr. Becker had to confess that he did not perform any analysis of his own:



Mot., Ex. C, 88:16–23 (emphasis added). Ultimately, GF is unable to identify where its expert uses *any* methodology to value those patents, much less a reliable methodology. *See* Resp. 3–6.

"Under Federal Rule of Evidence 702, district courts are assigned a gatekeeping role to determine the admissibility of expert testimony." *United States v. Valencia*, 600 F.3d 389, 423–24

(5th Cir. 2010). "The court must find that the evidence is both relevant and reliable before it may be admitted" and "ensure that the expert has reliably applied the methods in question." *Id.* As the proponent of Dr. Becker's expert testimony, GF "bears the burden of establishing the reliability of the expert's testimony." *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 400 (5th Cir. 2016). Rule 702 itself was amended in 2023 to emphasize that expert testimony is admissible only "if the proponent demonstrates to the court that it is more likely than not" that all four requirements of the rule are satisfied. Fed. R. Evid. 702. Here, GF has not provided any support for the idea that a damages expert can reliably incorporate another damages expert's opinions without verifying that the methodology was sound and relevant to the current case's context—particularly where the other expert's opinions were rejected in the prior proceeding. GF has therefore failed to meet its burden under amended Rule 702.

GF criticizes Katana's case law while ignoring crucial facts that support Katana's position. In *Factory Mutual Insurance Co. v. Alon USA L.P.*, the Fifth Circuit credited the expert's assertion that he "*did clearly state* that the sort of information relied upon here . . . is the sort of information reasonably relied upon by appraisers." 705 F.3d 518, 525 (5th Cir. 2013) (emphasis added). Dr. Becker did no such thing here. Further, the court stated that the expert's "investigation must be viewed in light of what was feasible" because other evidence the expert could rely on was destroyed in a fire. *Id.* The expert at issue in *Factory Mutual* provided approved methodology to the employees whose estimates he relied on and evaluated the reliability of the estimates, which the court deemed as doing "*more than just repeat information gleaned from external sources*." *Id.* (emphasis added). Unlike the expert in *Factory Mutual*, Dr. Becker has not been shown to be limited by feasibility or lacking tools to assess whether Ehrlickman's methodology was reasonable.

3

Additionally, in *Genband US LLC v. Metaswitch Networks Corp.*, "the key distinction [was] whether the expert [had] independently assessed the proffered opinion [of another expert] and endorsed it as reliable." No. 2:14-CV-33, 2015 WL 12911530, *3 (E.D. Tex. Sept. 30, 2015). As explained above, this is also a key issue in this Motion, and here the other expert's opinion was proffered and rejected in a different matter. Dr. Becker has not independently assessed Mr. Ehrlickman's rejected opinion but endorses it anyway. *See* Mot., Ex. A ¶¶ 94, 101, 109, 128, 202, 282, 292, 358, 386, 399 ███████████████; *see also* Mot., Ex. A ¶¶ 16, 328, 360, 362, 378 ███████████████. GF cannot rebut this assertion. Resp. 6.

Similarly, in *In re TMI Litigation*, the expert "testified in arriving at his conclusions he relied on the opinions of plaintiffs' other dose experts and assumed the correctness of each expert's proposition." 193 F.3d 613, 714 (3d Cir. 1999). The court noted that the expert "testified in his deposition that he never made any attempt to assess the validity of any of the assumptions the other experts used to formulate their opinions," which he was qualified to do. *Id.* at 715. As a result, the court determined that an expert's "failure to assess the validity of the opinions of the experts he relied upon together with his unblinking reliance on those experts' opinions, demonstrates that the methodology he used to formulate his opinion was flawed under *Daubert* as it was not calculated to produce reliable results." *Id.* at 716.

Finally, GF's hypocrisy in criticizing Dell's discussion of Mr. Carnick's opinion in the attorneys-fees arbitration is exceeded only by GF's misrepresentations of that discussion. *See* Resp. 9 (citing Resp., Ex. 2 ¶¶ 264–69). GF represents that Mr. Dell "adopts wholesale certain opinions" of Mr. Carnick but cites no support for its baseless representation other than GF's false parenthetical statement that Dell concludes "the .2% royalty rate chosen by Mr. Carnick reflects an industry rate from which 'the parties would recognize the range of relevant royalty rates.'"

4

Resp. 9. Dell never concludes that or "adopts" any opinions of Mr. Carnick. Rather, Mr. Dell *analyzes* Mr. Carnick's opinion—exactly what Dr. Becker did *not* do with Mr. Ehrlickman's valuations. Dell weighs Mr. Carnick's three approaches to valuation in that arbitration but does not adopt any Carnick opinion. *Id.* ¶¶ 264–69. He also expressly recognizes that "Mr. Carnick's opinions were based on the facts and circumstances surrounding the contract dispute between [law firm] Spence and Katana." *Id.* ¶ 266. Thus, rather than purporting to adopt any opinions of Mr. Carnick, Dell instead considers the range of "industry rates" (relevant to an Income Approach) that Mr. Carnick discovered in his research and notes that the parties would consider this range relevant to the hypothetical negotiation. *Id.* ¶ 269. Mr. Dell also observes that Mr. Carnick's research discovered "similar licenses to my own research, specifically the Numerical/UMC agreement" and that the range of rates from those industry licenses was consistent with other data points in the case. *Id.* n.423. Thus, Dell ties Carnick's work to the facts of this case by discussing which parts of Carnick's methodology would be relevant to the hypothetical negotiation. *Id.* ¶¶ 264–69.

Dr. Becker does the opposite with Ehrlickman's work. He ignores the methodology and simply accepts the conclusions. Dr. Becker fails to analyze the Ehrlickman valuation at all or even to note that the arbitrator expressly found Ehrlickman's utilization of a "brokered market approach" to be inconsistent with valuation for a licensing campaign, recognizing that "the value of an acquired patent is not it's sale price; ***the value is it's worth in a patent licensing campaign***." Mot., Ex. B at 12. Dr. Becker fails to address this or explain why a "brokered market approach" would be appropriate in this matter. (It would not be.) As a result, Dr. Becker's adoption of the Ehrlickman valuation is not tethered to the facts of the case and would serve only to confuse or mislead the jury. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) ("An

5

additional consideration under Rule 702—and another aspect of relevancy—is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.") (quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3rd Cir. 1985)).

To be clear, Dr. Becker performs his own analyses of other aspects of the licenses underlying the Ehrlickman valuation, and while Katana believes those analyses should be rejected by the jury, it is not seeking to exclude them. With its Motion, Katana asks only for adherence to Rule 702's terms and *Daubert*'s principles to ensure a reasoned basis in the evidence for any expert testimony to be admitted in the first place. Allowing Dr. Becker to testify to his reliance on another expert's valuation (1) that was offered and rejected in an unrelated proceeding related to an attorney-fees contract not at issue here, (2) that was not evaluated by Dr. Becker for accuracy or even a reliable methodology, and (3) whose author is not a witness in this case risks confusing or misleading the jurors and unfairly prejudicing Katana.[2]

> **2. Beyond being a mere mouthpiece for another person's irrelevant opinion, Dr. Becker's testimony related to the Ehrlickman valuation would do little more than import hearsay and should be excluded for this additional reason.**

---

[2] In its last gasp, GF accuses Katana of discovery wrongdoing to excuse, apparently, GF's failure to depose Mr. Ehrlickman. Resp. 15. GF's excuse doesn't hold water. First, deposing Ehrlickman is not the issue. He is not a fact witness but instead was merely an expert in an arbitration over an attorney-fees contract. Moreover, GF's position is that the only thing that matters is Ehrlickman's valuation opinion—not his methodology, assumptions, or anything else. And GF received that opinion but never requested Ehrlickman's deposition. Second, GF glosses over its own gamesmanship near the end of discovery. The Final Arbitration Award was in the public domain, complete with its discussion of both the Ehrlickman and Carnick valuations (*see* Dkt. 133, Ex. B at 12–13). GF obviously possessed it before the end of fact discovery, because GF used the Award as an exhibit at the deposition of Katana's principal, Khaled Fekih-Romdhane. Thus, GF could have, but did not, raise the issue of additional discovery from the arbitration before that deposition. Only now, after fact and expert discovery have closed and dispositive motions are pending, does GF express an interest in deposing both Mr. Ehrlickman *and* re-deposing Katana's principal. Resp. 16. GF's attempt at further delay in this case, however, should be rejected.

GF seeks to use its expert to regurgitate information that was prepared for Katana by an expert not in this case, but in an unrelated arbitration governed by an engagement letter between Katana and a law firm. *See* Mot., Ex. B at 12. That information was Mr. Ehrlickman's opinions on the estimated sales value of certain patents in a brokered market. *Id.* Concerning the governing contract, the arbitrator concluded: "Market-value or sale-value was not the terminology used, and the testimony of both principals underlies the reasons. . . . Value for both principals [i.e., for the law firm and for Katana] is what the patent can be licensed for, not sold. The term [in the contract] 'Gross Consideration' is designed to recapture the licensing value, the value of use, not value at sale." *Id.* at 12–13.

This basic background about the issues in the arbitration undercuts GF's pages of argument about its different theories to avoid the hearsay nature of non-witness Ehrlickman's out-of-court statements. The issues in this case relate to the value of certain patents to Katana, which is in the business of licensing (not selling) patents, or to GF based on the extent of its use of the patented technology. The circumstances of the arbitration confirm that Katana never adopted Ehrlickman's valuations to address either of those issues. Rather, the dispute in the arbitration had to do with calculating the law firm's compensation under the contract and specifically the meaning of its term "Gross Consideration." That contract and term are simply not part of this case, and GF has failed to show that the Ehrlickman opinions should be deemed "admissions of Katana" for any issue present here. Thus, those opinions are irrelevant, they risk confusing the issues for the jury, and yes, they are hearsay not subject to any exception in this case.

Fifth Circuit case law holds an expert is not an agent of a party "simply by virtue of acting as an expert in a prior case," and further that "circumstances where the testimony of an expert witness can serve as an adverse admission against the presenting party" are "narrowly construed"

7

and ***do not include*** times where an expert attempts to recite information prepared by another expert in another unrelated proceeding that was not retained for the current proceeding. *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 12 F.4th 476, 489 (5th Cir. 2021).

The cases GF relies on to dispute this assertion are distinguishable. As an initial matter, all predate *HTC*, only two were ever authoritative, and many are unpublished from assorted district courts. Several cited cases are irrelevant because the no-hearsay finding related to a party that declined to use an expert's work despite retaining that expert for that proceeding. *See Kreppel v. Guttman Breast Diagnostic Inst., Inc.*, No. 95-cv-10830, 1999 WL 1243891 (S.D.N.Y. Dec. 17, 1999); *Fox v. Taylor Diving & Salvage Co.*, 694 F.2d 1349 (5th Cir. 1983); *Collins v. Wayne Corp.*, 621 F.2d 777 (5th Cir. 1980); *Clanton v. United States*, No. 15-CV-124, 2017 U.S. Dist. LEXIS 93996 (S.D. Ill. June 19, 2017). Many cases find no hearsay when the prior litigation shares the same parties or subject event. *See Abstrax, Inc., v. Dell, Inc.*, No. 2:07-CV-00221, 2009 WL 10677355 (E.D. Tex. Oct. 9, 2009); *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630, 2014 WL 794328 (N.D. Cal. 2014); *In re Hanford Nuclear Rsrv. Litig.*, 534 F.3d 986 (9th Cir. 2008). And at least one of the cited cases did not involve an expert relying on the work of another expert. *See Marceau v. Int'l Broth. of Elec. Workers*, 618 F. Supp. 2d 1127 (D. Ariz. 2009).

Ultimately, though, the fundamental problem with GF's extended efforts to find a hearsay exception for Ehrlickman is that the circumstances of the arbitration—which would become a distracting side-show for the jury if this evidence were not excluded—emphasizes the issues here are different. With its losing effort to apply "Gross Consideration" conservatively under the contract at issue in the arbitration (and not at issue here), Katana cannot reasonably be found to have adopted a position that sale-value estimations quantify the patents' worth to Katana. *See* Resp. 13–14. Thus, the narrow set of circumstances required by *HTC* is not present here.

Allowing Dr. Becker to testify as to what Mr. Ehrlickman concluded in a vastly different context without tying it to the facts of this case would render Dr. Becker nothing more than a conduit of inadmissible hearsay in violation of the rules of evidence. His testimony in at least paragraphs 16, 94, 101, 109, 128, 202, 282, 292, 328, 358, 360, 362, 378, 386, and 399 of his report should therefore be excluded.

### B. Lack of Economic Analysis for Purported Non-Infringing Alternatives

Dr. Becker's report lacks any economic analysis regarding the claimed non-infringing alternatives. The issue is not whether Dr. Becker relied on Dr. Bravman's opinion on *technical* aspects of non-infringing alternatives. *See* Resp. 19. The problem is that nowhere in Dr. Becker's report does he quantify factors that might make such alternatives relevant—such as how much these alternatives would cost, the amount of sales and/or profit GF would lose if it decided to redesign, or if these alternatives would even be acceptable or available to GF customers.[3] In short, GF has no way to undo Dr. Becker's concession at his deposition—confirming he failed to address how much it would have cost GF ▌

▌ and admitting ▌

▌. *See* Mot. 6 (citing Mot., Ex. C at 101:5–20).

GF points to paragraphs 279 and 364 of Dr. Becker's report to allege that Dr. Becker considered ▌

---

[3] GF criticizes Katana's reliance on *Grain Processing Corp. v. American Maize-Products. Co.*, 185 F.3d 1341 (Fed. Cir. 1999) (*see* Resp. 18), but courts routinely rely on *Grain Processing* in deciding whether a party met their burden of showing the availability of non-infringing alternatives in the context of a reasonable royalty analysis. *See, e.g., Stoller Enters., Inc. v. Fine Agrochemicals Ltd.*, 705 F. Supp. 3d 774, 798 (S.D. Tex. 2023); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, No. 2:06-CV-348, 2011 WL 197869, at *2 (E.D. Tex. Jan. 20, 2011), *objections overruled*, No. 2:06-CV-348, 2011 WL 13196509 (E.D. Tex. Jan. 28, 2011); *Albritton v. Acclarent, Inc.*, No. 3:16-cv-03340, 2020 WL 11627275, at *14 (N.D. Tex. Feb. 28, 2020).

███████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

████████████████████ Resp. 18. But the cited paragraphs merely state: "████████████

█████████████████████████████████████████████████████████████████████

████████████████████████████████. There is no meaningful analysis of non-infringing alternatives, just a bulk summary of nearly half of the *Georgia-Pacific* factors in a short, generalized paragraph. In the exercise of its gatekeeping role, therefore, this Court should exclude any testimony by Dr. Becker about purportedly non-infringing alternative designs. GF and Dr. Becker have failed to provide any factual basis that could link such hypothetical designs to a reliable damages analysis.

## CONCLUSION

Dr. Becker brings no independent expertise or specialized knowledge to his discussion of Mr. Ehrlickman's patent valuations and Dr. Bravman's purported non-infringing alternatives. The Court should therefore grant Katana's Motion.

| | |
|---|---|
| Date: March 20, 2025 | Respectfully submitted, |

/s/ *Scott W. Breedlove*
E. Leon Carter
Texas Bar No. 03914300
lcarter@carterarnett.com
Scott W. Breedlove
Texas Bar No. 00790361
sbreedlove@carterarnett.com
Omer Salik
Texas Bar No. 24128282
osalik@carterarnett.com
Howard L. Lim
Texas Bar No. 24092701
hlim@carterarnett.com
**CARTER ARNETT PLLC**
8150 N. Central Expy, Suite 500
Dallas, Texas 75206
Telephone No. (214) 550-8188
Facsimile No. (214) 550-8185

**ATTORNEYS FOR PLAINTIFF KATANA SILICON TECHNOLOGIES LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record. Any documents filed under seal were served by email.

/s/ *Scott W. Breedlove*
Scott W. Breedlove